**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA ALBANY DIVISION**

**GEORGIA-PACIFIC CEDAR SPRINGS LLC**

**Plaintiff,**

**v.**

**MOR PPM, Inc.**

**Defendant.**

**Civil Action File No.** 1:13-CV-198(WLS)

**Jury Trial Demanded**

# COMPLAINT

Georgia-Pacific Cedar Springs LLC ("GP"), by and through its undersigned counsel, states as its Complaint against Defendant MOR PPM, Inc. the following:

## PARTIES, JURISDICTION AND VENUE

1.

GP is a limited liability company created under the laws of the State of Delaware, with its principal place of business located at 12551 Highway 273 West, Cedar Springs, Georgia 39832.

2.

Defendant MOR PPM is a corporation created under the laws of the State of South Carolina, with its principal place of business located at South Main Street, Society Hill, South Carolina 29593.

3.

This Court has subject matter jurisdiction of Plaintiff's claims against the Defendant pursuant to 28 USC § 1332(a) since there is complete diversity of citizenship between the parties and the amount in dispute is greater than $75,000.00.

4.

Venue is proper in this Court under 28 USC §1391 since the claims asserted herein arise out of work performed at Plaintiff's Cedar Springs, Georgia mill.

5.

MOR PPM is subject to the personal jurisdiction of this Court and may be served by serving a copy of the Summons and Complaint upon its registered agent in Georgia, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## ALLEGATIONS COMMON TO ALL COUNTS

6.

GP owns and operates the pulp and paper mill in Cedar Springs, Georgia (the "Mill").

7.

Under a contract dated April 26, 2010, GP engaged MOR PPM to replace the floor assembly of its Recovery Boiler No. 1 at the Mill, including the replacement of floor beams, panels, and other equipment (the "Work").

8.

Prior to the entry of the April 26, 2010 contract, GP and MOR PPM entered into a master Contractor Services Agreement on or about July 23, 2009. MOR PPM's performance of the Work was governed by the April 26, 2010 contract and the Contractor Services Agreement (and all documents incorporated by reference into either document) (collectively the "Contract."). A true and correct copy of the April 26, 2010 contract and a true and correct copy of pertinent sections of the Contractor Services

Agreement are attached hereto as Exhibits A and B and are incorporated herein by reference.

9.

Under the Contract, MOR PPM agreed to perform the Work for the lump sum amount of $855,000.

10.

Under the Contract, the Work was scheduled to be performed during a May 2010 Mill outage, scheduled to commence May 17, 2010.

11.

Under the Contract, MOR PPM agreed to perform the Work in a workmanlike manner using qualified, efficient and careful workers.

12.

Under the Contract, MOR PPM accepted responsibility for any damages sustained to GP's property.

13.

Under the Contract, MOR PPM agreed that any tubes damaged during demolition would be replaced at MOR PPM's expense.

14.

Under the Contract, MOR PPM agreed to protect, defend, indemnify and hold harmless GP from and against damages, losses or expenses, including but not limited to, reasonable attorneys' fees, arising out of or resulting from damage to tangible property attributable to the performance of the Work.

15.

Under the Contract, MOR PPM agreed to perform its Work in accordance with good industry practices.

16.

Under the Contract, MOR PPM agreed to execute the Work in such a manner so as to not disturb or damage surrounding structures or operating systems.

17.

Under the Contract, MOR PPM was required to take precautions ensuring the protection of existing Mill facilities.

18.

Under the Contract, MOR PPM warranted that the Work would conform to the requirements of the Contract, meet the standards of care applicable to the Work, and be free from defects in workmanship.

19.

In May 2010, MOR PPM commenced the removal of the floor and floor components in the Recovery Boiler. During the removal of the front wall to the floor seal refractory, MOR PPM improperly used a large air driven hammer, causing significant damage to the front and right hand side wall tubes.

20.

Damages to eighteen (18) of the front wall tubes required the removal of damaged segments and the installation of replacement tube segments.

21.

One smelt spout opening bent tube set (one 2 bent tube pack and two loose bent tubes) was also damaged and required replacement.

22.

Additional damage was done by MOR PPM by using an arc cutter to remove seal bars from the right hand side wall tubes of the boiler. Damages to eight (8) of the right hand side wall tubes required the removal of damaged segments and the installation of replacement tube segments.

23.

MOR PPM also failed to properly cut the rear wall for the floor installation, requiring the establishment of a new cut line, and the installation of forty-nine (49) six (6) inch extension tubes.

24.

MOR PPM failed to perform the Work in a workmanlike manner, and did not use qualified, efficient and careful workers.

25.

The Work performed by MOR PPM did not conform to the requirements of the Contract, did not meet the standards of care applicable to the Work, was not performed in accordance with good industry practices and was not free from defects in workmanship.

26.

As a consequence of MOR PPM's defective and deficient performance of the Work, the Contract was terminated and MOR PPM was removed from the Mill.

27.

As a consequence of MOR PPM's defective and deficient performance of the Work, GP was required to engage the services of a replacement contractor, RMR, to repair the damages to the boiler tubes and to complete and correct MOR PPM's original scope of Work.

28.

Due to the required repairs, the value and useful life of the boiler has been compromised and reduced. The risk of a water tube leakage in the Recovery Boiler is also greater due to the repairs necessitated by MOR PPM's improper performance of the Work.

**COUNT I**
**BREACH OF CONTRACT**

29.

Plaintiff restates the allegations set forth in Paragraphs 1-28 of its Complaint as fully as if said allegations were set forth herein verbatim.

30.

During the performance of the Work, MOR PPM breached the Contract by damaging the wall tubes and other components of the Recovery Boiler; failed to perform the Work in a workmanlike manner; and did not use qualified, efficient and careful workers.

31.

During the performance of the Work, MOR PPM did not meet the standards of care applicable to the Work, did not perform the Work in accordance with good industry practices, and the Work was not free from defects in workmanship.

32.

Following the performance of the corrective work by RMR, GP demanded reimbursement by MOR PPM for the damages sustained due to its breach of the Contract and negligent construction.

33.

MOR PPM refused to accept financial responsibility for the damages it caused to GP's property, and refused to honor its express contractual obligations to replace all tubes damaged during demolition.

34.

MOR PPM also breached its duty under the Contract to protect, defend, indemnify and hold harmless GP from and against damages, losses or expenses, including but not limited to, reasonable attorneys' fees, arising out of or resulting from damage to tangible property attributable to the performance of the Work.

35.

As a direct and proximate result of MOR PPM's breach of the Contract, GP has incurred damages in the amount of $578,450, representing the costs incurred to inspect, test and repair the wall tubes and other components of the Recovery Boiler.

36.

As a direct and proximate result of MOR PPM's breach of the Contract, GP was required to engage a replacement contractor, RMR, and was required to pay the replacement contractor, $937,000 to perform the scope of Work MOR PPM was contractually obligated to perform.

37.

As a direct and proximate result of MOR PPM's breach of the Contract, GP incurred damages in an amount no less than $82,000, which represents the difference between the amount paid to RMR ($937,000) to perform MOR PPM's scope of Work and the amount of the original Contract ($855,000).

38.

As a direct and proximate result of MOR PPM's breach of the Contract, and specifically, as a result of the many welds and replacement tube segments installed to repair the damage caused by MOR PPM, GP has incurred damages related to increased testing and maintenance that is required to be performed on the Recovery Boiler. These damages amount to no less than $115,690 and will be proven at trial.

39.

As a direct and proximate result of Defendant MOR PPM's breach of the Contract and the required repairs, the value and useful life of the Recovery Boiler has been compromised and reduced, and the amount of the resulting damages will be proven at trial.

40.

By virtue of the foregoing, GP is entitled to recover money damages for breach of contract from MOR PPM in an amount to be demonstrated at the trial of this action but in any event, not less than: $578,450 representing the costs incurred to inspect, test and repair the damaged wall tubes and other components of the Recovery Boiler; $115,690 representing the costs for increased testing and maintenance on the Recovery Boiler made necessary as a result of the many welds and tube segments installed to remediate damages caused by MOR PPM; plus the amount over and above the original Contract amount of $855,000 that GP was required to pay RMR to complete and correct the original scope of Work under the Contract; plus damages resulting from the reduction in the value and useful life of the boiler; plus interest on these amounts as provided by Georgia law.

41.

All conditions precedent to GP's recovery on the claims set forth in Count I of this Complaint have occurred, have been met or have been waived.

## COUNT II
## NEGLIGENCE

42.

Plaintiff restates the allegations set forth in Paragraphs 1-41 of its Complaint as fully as if said allegations were set forth herein verbatim.

43.

MOR PPM was under a duty to exercise a reasonable degree of care, skill and ability in the performance of the Work.

44.

MOR PPM breached its duty to exercise a reasonable degree of care, skill and ability in the performance of the Work by negligently performing the Work and by negligently damaging GP's property.

45.

As a direct and proximate result of MOR PPM's negligent construction, GP has incurred damages in the amount of $578,450 to inspect, test and repair the wall tubes and other components of the Recovery Boiler.

46.

As a direct and proximate result of MOR PPM's negligent construction; GP was required to engage a replacement contractor, RMR, and was required to pay the replacement contractor, $937,000 to perform the scope of Work MOR PPM was contractually obligated to perform.

47.

As a direct and proximate result of MOR PPM's negligent construction, GP incurred damages in an amount no less than $82,000, which represents the difference between the amount paid to RMR ($937,000) to perform MOR PPM's scope of Work and the amount of the original Contract ($855,000).

48.

As a direct and proximate result of MOR PPM's negligent construction, and specifically, as a result of the many welds and replacement tube segments installed to repair the damage caused by MOR PPM, GP has incurred damages related to increased testing and maintenance that is required to be performed on the Recovery Boiler. These damages amount to no less than $115,690 and will be proven at trial.

49.

As a direct and proximate result of Defendant MOR PPM's negligent construction, and the required repairs, the value and useful life of the boiler has been compromised and reduced, and the amount of the resulting damages will be proven at trial.

50.

By virtue of the foregoing, GP is entitled to recover money damages from MOR PPM for negligent construction in an amount to be demonstrated at the trial of this action, but in any event, not less than: $578,450 representing the costs incurred to inspect, test and repair the damaged wall tubes and other components of the Recovery Boiler; plus $115,690, representing the costs for increased testing and maintenance on the Recovery Boiler made necessary as a result of the many welds and tube segments installed to remediate the damages caused by MOR PPM; plus the amount over and above the original Contract amount of $855,000 that GP was required to pay RMR to complete and correct the original scope of Work under the Contract; plus damages resulting from the reduction in the

value and useful life of the boiler; plus interest on these amounts as provided by Georgia law.

51.

All conditions precedent to GP's recovery on the claims set forth in Count II of this Complaint have occurred, have been met or have been waived.

**COUNT III**
**ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

52.

Plaintiff restates the allegations set forth in Paragraphs 1-51 of its Complaint as fully as if said allegations were set forth herein verbatim.

53.

MOR PPM negligently caused damages to GP's tangible property, and is responsible under the Contract for all reasonable attorney's fees incurred by GP to be demonstrated at the trial of this action.

54.

MOR PPM has also acted in bad faith, has been stubbornly litigious, and has caused GP unnecessary trouble and expense. Pursuant to O.C.G.A. § 13-6-11, GP is entitled to recover its litigation expenses,

including its reasonable attorneys' fees and costs, in an amount to be demonstrated at the trial of this action.

55.

All conditions precedent to GP's recovery on the claims set forth in Count III of this Complaint have occurred, have been met or have been waived.

WHEREFORE, GP prays for the following relief:

(a) That it have a judgment against MOR PPM for breach of contract as alleged in Count I in an amount to be proven at trial, but in no event less than $578,450, representing the costs incurred to inspect, test and repair the damaged wall tubes and other components of the Recovery Boiler; plus the amount over and above the original Contract amount of $855,000 that GP was required to pay RMR to complete and correct the original scope of Work; plus $115,690 representing the costs for increased testing and maintenance on the Recovery Boiler required due to the many welds and tube segments installed to remediate the damages caused by MOR PPM; plus an

amount to be proven at trial for the reduction in value and useful life of the boiler; plus interest on this amount as provided by Georgia law;

(b) That it have a judgment against MOR PPM for negligent construction as alleged in Count II, in an amount to be proven at trial, but in no event less than $578,450, representing the costs incurred to inspect, test and repair the damaged wall tubes and other components of the Recovery Boiler; plus the amount over and above the original Contract amount of $855,000 that GP was required to pay RMR to complete and correct the original scope of Work; plus $115,690 representing the costs for increased testing and maintenance on the Recovery Boiler required due to the many welds and tube segments installed to remediate the damages caused by MOR PPM; plus an amount to be proven at trial for the reduction in value and useful life of the boiler; plus interest on this amount as provided by Georgia law;

(c) That it have a judgment against MOR PPM on Count III of the Complaint for all litigation expenses incurred by GP, including its reasonable attorneys' fees, plus interest on this amount as provided by Georgia law;

(d) That it have such other and further legal and equitable relief as the Court deems just or proper;

(e) That all costs of this action be assessed against the Defendant; and

(f) That it have a trial by a jury as to all issues of fact.

This 20th day of December 2013.

ALSTON & BIRD LLP

JOHN I. SPANGLER, III
Georgia Bar No. 669025

1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

Attorneys for Plaintiff
Georgia-Pacific Cedar Springs LLC