IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CEDAR SPRINGS LLC, | : : : |
| Plaintiff, | : : |
| v. | CASE NO.: 1:13-CV-198 (LJA) : : |
| MOR PPM, INC., | : : |
| Defendant. | : : |

## **ORDER**

Before the Court are the following motions: 1) Defendant's Motion for Partial Summary Judgment (Doc. 20); 2) Defendant's Motion for Spoliation and Sanctions (Doc. 21); 3) Plaintiff's Motion for Partial Summary Judgment (Doc. 22); and 4) Plaintiff's Motion for Sanctions Pursuant to Rule 11 (Doc. 52). For the reasons that follow, Defendant's Motion for Spoliation and Sanctions (Doc. 21) and Plaintiff's Motion for Sanctions Pursuant to Rule 11 (Doc. 52) are **DENIED**. Defendant's Motion for Partial Summary Judgment (Doc. 20) is **DENIED,** and Plaintiff's Motion for Partial Summary Judgment (Doc. 22) is **GRANTED** in part and **DENIED** in part.

1

# I. BACKGROUND

## A. Factual Background[1]

Georgia-Pacific Cedar Springs LLC ("Plaintiff") owns and operates a pulp and paper mill in Cedar Springs, Georgia ("the mill"). (Doc. 44 at 1-2). At issue in this case is a part of the mill known as Recovery Boiler No. 1 ("the recovery boiler"). *Id.* The recovery boiler is a huge building that operates as a furnace, using various chemicals extracted in the pulping process to create energy. *Id.*; (Doc. 47, ¶ 2). The interior consists of multiple superheated tubes which line the walls and make up the floor. (Doc. 44 at 1-2). The tubes serve multiple functions, including acting as a structural component, moving water, and generating and moving heat and steam. (Doc. 47, ¶ 2). In 2010, as part of its routine maintenance for the recovery boiler, Plaintiff decided to replace the floor. *Id.* It awarded the contract to MOR PPM, Inc. ("Defendant"). *Id.*

Prior to the decision to replace the floor, Plaintiff and Defendant had entered into a master Contractor Services Agreement. *Id.* at 2. On April 26, 2010, Plaintiff and Defendant entered into a more specific contract that provided for Defendant to replace the floor of the recovery boiler. *Id.* The Contractor Services Agreement and the specific contract for replacement of the floor shall be known collectively as "the Contract." The Contract includes an Indemnity provision, which states in relevant part:

> "To the fullest extent permitted by law, the Contractor will protect, defend, indemnify and hold harmless GP, and its officers, directors, consultants, and agents (excluding licensed professionals) and employees (collectively, "Indemnified Parties"), from and against claims, damages, losses or expenses, including, but not limited to, reasonable attorneys' fees, arising out of or resulting from the performance of the Work provided that such claim, damage or loss is attributable to bodily injury, sickness, disease, or death or injury to tangible property (other than the Work itself), but only to the extent caused in whole or in part by any willful or negligent acts or omissions of Contractor, or its subcontractors, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable. (Doc. 1-1, Ex. B, ¶ 13(A)).

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answer to the Complaint (Doc. 9), Defendant's Statement of Undisputed Facts (Doc. 20-4), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 44), Plaintiff's Statement of Undisputed Facts (Doc. 22), Defendants' Response to Plaintiff's Statement of Undisputed Facts (Doc. 47), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to the nonmoving party. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Contract also contained provisions requiring Defendant to perform the work "in a workmanlike manner using qualified, efficient, and careful workers," "in a manner to protect the work… [and] [Plaintiff's] property… from loss, damage, unsafe conditions or injury of any type" and "in strict conformance with best practices consistent with the standard of care applicable." *Id.* at ¶ 3.5. The Contract further required the "workmanship to be of good quality." *Id.* at ¶ 3.10. Finally, the specific agreement covering floor replacement stated that "[t]he Contractor is responsible for any damage to GP property during the work." (Doc. 1-1, Ex. A, ¶ 2.1.5).

Defendant commenced the work under the Contract on May, 17 2010, during the boiler outage at the mill. (Doc. 22, ¶ 12). As part of the work, Defendant was required to remove the refractory between the floor tubes and wall tubes. *Id.* at ¶ 19. Refractory is a cement-like material installed in the floor to cover the connection between the floor and wall tubes. *Id.* After Defendant worked on the job for a few days, Plaintiff discovered that Defendant damaged multiple tubes and other components within the boiler, necessitating extensive and costly repairs. (Doc. 44 at 3). Plaintiff hired a replacement contractor, RMR, to continue the work that Defendant was originally contracted to perform. *Id.* at 5. Plaintiff claims that it was important to get the alleged damage fixed quickly because the mill was shut down during the recovery boiler outage. (Doc. 22, ¶ 35).

### B. Procedural Background

On December 20, 2013, Plaintiff, Georgia-Pacific Cedar Springs LLC, commenced this action against Defendant, MOR PPM, Inc. (Doc.1). Defendant answered and alleged counterclaims against Plaintiff on May 23, 2014. (Doc. 9). On April 30, 2015, Defendant moved for partial summary judgment as well as for a finding of spoliation and imposition of sanctions against Plaintiff. (Docs. 20, 21). On the same day, Plaintiff also moved for partial summary judgment. (Doc. 22). On May 21, 2015, Plaintiff responded to Defendant's motions for summary judgment and sanctions and Defendant responded to Plaintiff's motion for summary judgment. (Docs. 44, 45, 46, 47). Both parties timely replied on June 4, 2015. (Docs. 48, 49, 50). As such, Defendant's Motions for Summary Judgment and

Sanctions and Plaintiff's Motion for Summary Judgment are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

Plaintiff filed a Motion for Sanctions Pursuant to Rule 11 on June 23, 2015 (Doc. 52), and Defendant responded on July 14, 2015. (Doc. 53). Plaintiff timely replied on July 28, 2015. (Doc. 61). As such, Plaintiff's Motion for Sanctions is also now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## II.  **DEFENDANT'S MOTION FOR SPOLIATION AND SANCTIONS**

Defendant alleges that Plaintiff caused spoliation by ordering the replacement contractor to continue the repairs without allowing Defendant to see the alleged damage (Doc. 21-1 at 11). It asks the Court to find that Plaintiff committed spoliation and to impose appropriate sanctions. (Doc. 21 at 1). Spoliation refers to the "destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301 (11th Cir. 2009). As the party seeking sanctions, Defendant has the burden of proof. *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1362 (M.D. Ga. 2012). To meet its burden, Defendant "must prove that the missing evidence existed at one time; that the alleged spoliator had a duty to preserve the evidence; and that the evidence was crucial to his case." *Id.* "A court's power to impose sanctions for spoliation flows from its inherent power to manage its affairs and achieve an orderly and expeditious disposition of cases." *Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363, 1371 (M.D. Ga. 2011) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)). "Sanctions function to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process." *Id.* The Court has broad discretion in determining whether to award spoliation sanctions. *Flury,* 427 F.3d at 945.

Although the Eleventh Circuit has not prescribed "specific guidelines" for imposing spoliation sanctions, the court in *Flury* set forth the following factors for courts to consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4)

4

whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded. *Id.* Appropriate sanctions for spoliation may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* However, an adverse inference should not be drawn unless the circumstances surrounding the evidence's absence indicate bad faith. *See Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997) (finding that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith"). "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009).

Defendant argues that spoliation occurred when Plaintiff ordered the replacement contractor to continue the repairs without allowing Defendant to see the alleged damage (Doc. 21-1 at 11). Even if Defendant could prove spoliation, however, sanctions would be inappropriate because Defendant has not shown Plaintiff's bad faith. According to Defendant, the very act of terminating Defendant's contract and hiring the replacement contractor is dispositive of Plaintiff's bad faith. (Doc. 22-1 at 15-17). This is insufficient to meet Defendant's burden. During an outage, the entire mill is inoperable, thereby impeding Plaintiff's business. It is more than reasonable to continue repairs in the limited outage time frame so that operation of the boiler may resume. *Cf. 325 Goodrich Ave., LLC v. Southwest Water Co.*, 891 F.Supp.2d 1364, 1377 (2012) (finding no bad faith when defendant could not examine building damage because building was destroyed in the ordinary course of business). At most, Plaintiff was negligent in not offering Defendant a specific time and place to view the alleged damage. Additionally, Plaintiff presented evidence that a claim against Defendant was not considered until after the outage was complete, indicating that it did not have bad faith when ordering the repairs to the boiler. (Doc. 33 at 56; Doc. 45 at 12); *see also Kitchens v. Brusman*, 303 Ga.App. 703, 707 (2010) (holding that "contemplation of *potential* liability is not notice of potential litigation"). As such, Defendants Motion for Sanctions is **DENIED.**

### III.     PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff moves for Rule 11 sanctions against Defendant for filing its Motion for Spoliation and Sanctions (Doc. 21). (Doc. 52). Rule 11 sanctions are appropriate "1) when a party files a pleading that has no reasonable factual basis; 2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advances as a reasonable argument to change existing law; or 3) when the party files a pleading in bad faith or for an improper purpose." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001). The "objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). The Eleventh Circuit employs a two-step approach to determine whether sanctions are appropriate. First, the court "determines whether the party's claims are objectively frivolous in view of the facts or law." If they are, then the court determines "whether the person who signed the pleadings should have been aware that they were frivolous." *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995); *see also Boone v. JP Morgan Chase Bank*, 447 Fed.Appx. 961, 965 (11th Cir. 2011). Plaintiff argues that Defendant's factual contentions have no evidentiary support, that Defendant mischaracterizes facts in the record, that its claims are not warranted by existing law, and that it mischaracterizes Eleventh Circuit precedent. (Doc. 52-1). The Court finds that Defendant's factual contentions and legal claims were not objectively frivolous in view of the facts or law.

Sanctions premised on factually groundless allegations are appropriate when the party offers "no evidence to support their allegations." *Manhattan Const. Co. v. Place Properties LP*, 559 Fed. Appx. 856, 858 (11th Cir. 2014); *see also Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). Plaintiff first alleges that there is no evidentiary support for Defendant's claim that it "never had an opportunity to inspect the alleged damage to the boiler." (Doc. 52-1 at 4 citing Doc. 21-1 at 2). Plaintiff argues that Defendant's workers saw the damage when it occurred, that Defendant had notice of the damage in time to examine it before being escorted off premises, and Defendant never asked to inspect the damage. (Doc. 52-1).

6

Contrary to Plaintiff's contention, there is sufficient evidence to establish that Defendant's claim that they were not allowed to inspect the damage is not baseless. Mr. Cartrette, the project superintendent, testified that he was "not allowed to go up and look at [the boiler]" after being notified of the damage. (Doc. 31 at 48:16-19:7). Mr. Gaskins, a quality control specialist, testified that after he went back to get his safety gear, he was not allowed to go back and examine the boiler. (Doc. 30 at 56-57). Even Mr. Withem, another quality control specialist, who admitted to seeing some damage in his declaration, only admitted to seeing damage caused by jackhammers. (Doc. 23-4, ¶ 7). He made no mention of observation or opportunity to examine the damage to side wall tubes or rear wall. Based on the testimony of Mr. Cartrette, Mr. Gaskins, and Mr. Withem, Defendant's assertion that it did not have an opportunity to inspect the damage to the boiler is not groundless.

Plaintiff also alleges that Defendant mischaracterized evidence in the record by using Mr. Ollis's testimony that he, personally, did not have an opportunity to go into the boiler to support the assertion that Defendant was not allowed to gather evidence from the boiler. (Doc. 52-1 at 8-9). Plaintiff cites to *Norman v. Griffin* for the proposition that Rule 11 "provides for sanctions against a party…when papers filed with the court contain intentionally misleading or patently false information." 2014 WL 7404008 (M.D. Ga. 2014). This statement is not patently misleading. But even if Defendant's statements could be construed as mischaracterizations, Plaintiff has not introduced any evidence that they are "intentionally misleading or patently false."

Plaintiff then argues that Defendant ignored the requirement of bad faith in requesting sanctions for the alleged spoliation, and thus based its claim on an invalid legal theory. (Doc. 52-1 at 10). As discussed above, bad faith is a prerequisite for the imposition of sanctions on a party accused of spoliation. *See Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997). While the Court finds herein that Plaintiff did not act in bad faith when replacing the boiler, Defendant did argue bad faith in its spoliation motion. That Defendant did not prevail in this argument, it was not a frivolous argument.

Finally, Plaintiff alleges that Defendant mischaracterizes the actions that can constitute bad faith under Eleventh Circuit precedent. (Doc. 52-1 at 13). Plaintiff argues that

Defendant incorrectly claimed that "anything more than 'mere negligence' in destroying evidence is enough to raise an adverse inference," that Defendant ignored *Bashir's* requirement that bad faith arise "out of consciousness of a weak case," and that Defendant's assertion that bad faith is met by "active and knowing destruction" is misleading. (Doc. 52-1 at 13-15). Rule 11, however, is only "intended to deter claims with *no…*legal basis at all." *Davis*, 906 F.2d at 538.

*Bashir* states: "In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. Mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case." *Bashir*, 119 F.3d at 931. Defendant cited *Bashir* for the proposition that "Anything more than 'mere negligence' in destroying the evidence is enough to raise an adverse inference." (Doc. 21-1 at 16). While not an accurate statement of the Court's holding, it is not so far off as to be objectively frivolous.

Defendant cites to *F.T.C.* for the proposition that "all that is required" to find bad faith is an "active and knowing destruction" of evidence. (Doc. 21-1 at 16). In *F.T.C.*, the Court used two examples to illustrate the meaning of "bad faith" and used the phrase "active and knowing" to describe the conduct in these examples. *F.T.C. v. First Universal Lending, LLC*, 773 F.Supp.2d 1332, 1352 (S.D. Fla. 2011). Again, even if the Court concluded that Defendant mischaracterized the court's holding by adding the phrase "all that is required," Defendant's claim was not objectively frivolous. For the reasons stated above, Plaintiff's Motion for Sanctions is **DENIED**.

### IV.    MOTIONS FOR SUMMARY JUDGMENT

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (citation omitted). Cross-motions may, however, "be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* Nevertheless, the Court must evaluate each motion separately, "as each movant bears the burden of establishing that no genuine issue of material facts exists, and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004); *see also D & H Therapy Associates, LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn.").

## B. Defendant's Motion for Partial Summary Judgment

Defendant has moved for summary judgment on Plaintiff's claim for attorneys' fees and litigation expenses. Defendant argues that it is entitled to summary judgement on attorneys' fees under both the Contract and a statutory provision. For the reasons set forth below, Defendant' motion is **DENIED**.

### 1. Contract Provision

Defendant argues that the Indemnity Provision of the Contract does not provide for recovery of attorneys' fees and litigation expenses under the facts of this case because: 1) Georgia law does not allow for a recovery of litigation expenses between the parties under indemnity provisions; and 2) because this particular Indemnity Provision only protects Plaintiff from losses to a third party (Doc. 20-1, at 8-12).

Defendant's first argument is incorrect as a matter of law. Under Georgia law, an award of attorneys' fees is proper when a contract's provisions provide for such. *See Padilla v. Padilla*, 282 Ga. 273, 274 (2007) ("Generally, an award of attorneys' fees is not owed *unless supported by statute or contract*.") (Emphasis added). Furthermore, indemnity provisions are not categorically limited to the recovery of losses to third parties. The Supreme Court of Georgia defines "indemnify" as "to reimburse another for a loss suffered because of a third party's or one's own act or default." *Lloyd's Syndicate No. 5820 v. AGCO Corp.*, 294 Ga. 805, 811 (2014); *see also Phillips 66 Co. v. Gish Oil Co.*, 2014 WL 6673923, at *1 (M.D. Ga. 2014).

It is a question of law for the court to determine the scope of a written indemnification clause. *JNJ Foundation Specialists*, 311 Ga.App. 269, 279 (2011). When interpreting indemnity agreements under Georgia law, courts apply the ordinary rules of contract construction. *Travelers Cas. And Sur. Co. of America v. Winmark Homes, Inc.*, 518 Fed. Appx. 899, 902 (11th Cir. 2013). If the language employed by the parties is "plain, unambiguous and capable of only one reasonable interpretation" then courts must refrain from additional interpretation. *Id.*; *see also JNJ Foundation Specialists*, 311 Ga.App. at 279. When the language is ambiguous, the court must strictly construe the contract against the indemnitee. *See JNJ Foundation Specialists*, 311 Ga.App. at 279; *see also SRG Consulting*, 282 Ga.App. at 844.

> The Indemnity Provision in the Contract before the Court provides:
>
> "To the fullest extent permitted by law, the Contractor will protect, defend, indemnify, and hold harmless GP, and its officers, directors, consultants, and agents (excluding licensed professionals) and employees (collectively, "Indemnified Parties"), from and against claims, damages, losses or expenses, including, but not limited to, reasonable attorney's fees, arising out of or resulting from the performance of the Work provided that such claim, damage or loss is attributable to bodily injury, sickness, disease, or death or injury to tangible property (other than the Work itself), but only to the extent caused in whole or in part by any willful or negligent acts or omissions of Contractor, or its subcontractor(s), or anyone directly or indirectly employed by them or anyone for whose acts they may be liable." (Doc. 20-2 ¶ 13(a)).

The Contract's language requires that claims for indemnification "ar[ose] out of or result[ed] from the performance of the Work." The Contract defines "Work" and "Services" interchangeably as "the activities to be performed for GP by Contractor." (Doc. 20-2 ¶ 1).

Plaintiff is pursuing both negligence and breach of contract claims under the theory that Defendant's negligence caused injury to tangible property in the course of Defendant's provision of services under the contract. Defendant's position is that the claim for indemnity does not arise from the work itself, but rather from enforcement of the contract and that "the purpose of an indemnity clause in a contract is not to protect the parties to the contract from legal action by each other to enforce the contract." *SRG Consulting, Inc. v. Eagle Hosp. Physicians, LLC*, 282 Ga.App. 842, 845 (2006). In a case with a nearly identical provision, the court held that "the indemnification clause of the contract does not apply here for the simple reason that this is not an action for 'negligence or willful misconduct." *Georgia Operators Self-Insurers Fund v. PMA Management Corp.*, 143 F. Supp. 3d. 1317, 1347 (N.D. Ga. 2015). In *Georgia Operators*, the plaintiff's negligence claims had been dismissed and the case was limited to claims for breach of contract. *Id.* Based on the plain language of the provision in the Contract, to the extent that Plaintiff seeks attorney's fees under the Indemnity Provision for its negligence claims, the Defendant's Motion for Summary Judgment is **DENIED**.

### 2. Statutory Provision

Defendant also argues that it is entitled to summary judgment on Plaintiff's claim for attorney's fees under O.C.G.A. § 13-6-11. (Doc. 20-1, at 16). O.C.G.A. § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Ordinarily, a trial court is not authorized to grant summary judgment in favor of the party claiming an award of attorneys' fees because both the liability for and amount of fees are solely for the jury's determination. *Covington Square Associates, LLC v. Ingles Markets, Inc.*, 287 Ga. 445, 446-47 (2010). But when there is "absolutely no evidence" to support an award in favor of the plaintiff, the trial court is authorized to grant summary judgment in favor of the defendant. *Id.* at 447.

Under the statute, the plaintiff must meet its burden of showing that the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary

trouble and expense." O.C.G.A. § 13-6-11. The element of bad faith "must relate to the acts in the transaction itself prior to litigation, not to the motive with which a party proceeds in litigation." *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002); *see also Silverpop Systems, Inc. v. Leading Market Technologies, Inc.*, 641 Fed.Appx. 849, 859 (11th Cir. 2016) (requiring a showing of "bad faith in entering or in performing the contract"); *Pulte Home Corp v. Woodland Nursery & Landscapes, Inc.*, 230 Ga.App. 455, 457 (1998). Similarly, "bad faith" does not encompass bad faith in defending a claim after a cause of action has already arisen. *Steel Magnolias Realty, LLC v. Bleakley*, 276 Ga.App. 155, 157 (2005); *see also Artzner v. A & A Exterminators, Inc.*, 242 Ga.App. 766, 773 (2000). Plaintiff has failed to introduce any evidence showing that Defendant had bad faith in entering or performing the contract.

To prevail under a theory of stubborn litigiousness or causing unnecessary trouble, Plaintiff must show "that there exists no bona fide controversy or dispute regarding liability for the underlying cause of action." *David G. Brown*, 274 Ga. 849, at 850. The genuine dispute may be "of law or fact, on liability or amount of damages, or on any comparable issue." *Nash v. Studdard*, 294 Ga.App 845, 852 (2008) *quoting M & H Constr. Co. v. North Fulton Dev. Corp.*, 238 Ga.App. 713, 714 (1999); *Brown v. Baker*, 197 Ga. App. 466, 468-69 (1990). In some cases, a party may have exhibited stubborn litigiousness "if there is no bona fide controversy as to liability, even if there is a bona fide controversy as to damages." *Daniel v. Smith*, 266 Ga.App. 637, 641 (2004); *Southern Ry. Co. v. Crowe*, 186 Ga.App. 244, 246-47 (1988).

Plaintiff essentially argues that Defendant has been stubbornly litigious because the dispute is over the amount of damages rather than the issue of liability. Defendant, however, argues that, given the age of the tubes and preexisting damage they are not liable for the damage to the tubes. Thus, there is a genuine question of material fact as to liability and the question of whether Defendant has been stubbornly litigious cannot be determined as a matter of law at this stage. Accordingly, summary judgment is not appropriate, and Defendant's Motion for Summary Judgment on the claim of statutory attorney's fees is **DENIED.**

C. **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff has also moved for partial summary judgment. (Doc. 22). Plaintiff argues that it is entitled to summary judgment on its breach of contract claim, its negligence claim, and its request for attorney's fees, as well as on Defendant's counterclaims of conversion, implied bailment, unjust enrichment, and quantum meruit. *Id.* Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

I. **Breach of contract**

The elements of a right to recover for a breach of a contract are (1) breach of a valid contract and (2) resultant damages to a party that has the right to complain about the contract being broken. *Burgess v. Religious Technology Center, Inc.*, 600 Fed.Appx. 657, 664 (11th Cir. 2015); *see also Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga.App. 278, 279 (1996). There is no dispute about the validity of the Contract in this case. (Doc. 47 ¶ 9). Thus the question for this court is whether Defendant breached the Contract, causing Plaintiff to suffer resultant damages.

First, Plaintiff alleges that Defendant breached § 3.5(a) of the Master Agreement, which requires the performance of work to be conducted "in a workmanlike manner, using qualified, efficient, and careful workers." (Doc 22-1, at 10). Plaintiff alleges that the following facts support its claim for breach: 1) MOR damaged the front wall tubes of the boiler by using a two-man jackhammer; 2) MOR's use of a two-man jackhammer was not in accordance with industry standards; 3) MOR failed to properly supervise the removal of the refractory; 4) MOR's personnel improperly used an arc gouger to remove seal bars from the right side wall of the boiler room, resulting in damages to the tubes on that wall; and 5) MOR misplaced a cutline on the rear wall, resulting in a cutline that was both crooked and too high. *Id.* at 10-11. There are genuine disputes of material fact whether Defendant breached the contract.

For example, there is a genuine factual dispute as to whether MOR damaged the front wall tubes of the boiler by using a two man jackhammer and whether the use of such a tool is outside of industry standards. Plaintiff cites to the declaration of Mr. Kittel, who viewed a photograph and identified the tool being used when the damage occurred as a "two

man jackhammer" (Doc. 25-1, ¶ 10). Defendant, however, cites to the deposition of the very same Mr. Kittel, in which he identifies the tool in the same photo as a "two hand jackhammer." (Doc. 34 at 151). Plaintiff also cites to the deposition of Mr. Gardner, where he stated that two people would be necessary to hold a "big hammer," but he did not state that a "two man jackhammer" was used. (Doc. 29 at 24). As to the question of industry standard, Plaintiff cites to the depositions of Mr. Gardner and Mr. Nelson, who both say that use of hydroblasting is preferred over the use of a jackhammer. (Doc. 23-7 at 67; Doc. 29 at 39). Mr. Nelson goes on to say that the use of a jackhammer is not an acceptable practice. (Doc. 23-7 at 67). Mr. Kittel, on the other hand, stated that it is not unusual to use a small jackhammer in the industry to remove refractory but that a two-man jackhammer is inappropriate. (Doc. 34 at 42). Defendant, however, cites to the depositions of Mr. Sullivan, who said that it is industry practice to use jackhammers with dulled chisels, and Mr. Hamilton, who says that he has seen the use of pneumatic jackhammers and hyrdoblasting to remove refractory and that he would not foresee a problem with the use of either method. (Doc. 36 at 59; Doc. 40 at 34).

The Parties have also each presented contradictory facts as to whether Defendant misplaced the cut line on the rear wall, resulting in a cut line that was both crooked and too high. Plaintiff cites to the declaration of Mr. Kittel, stating that Defendant failed to properly cut the tubes in the rear wall by making a crooked line. (Doc. 25-1, ¶ 14). Defendant cites to the deposition of Mr. Cartrette, who states that he believes he laid out the line correctly and that his men cut the line correctly. (Doc. 31 at 58). Additionally, he mentions a preexisting cut line that caused Defendant to have to change their cut line plan. *Id.* at 59. Mr. Kittel also acknowledged this preexisting cut line. (Doc. 25-1 at GP-RBCS-001706).

While there is less of a question regarding whether Defendant's personnel improperly used an arch gouger (also known as arc cutter) to remove seal bars from the right side wall of the recovery boiler, causing damage to tubes on the right side wall, Plaintiff cites to the deposition and declaration of Mr. Kittel, who states that he witnessed Defendant's personnel using such a tool and that it was the wrong tool for the job. (Doc. 25-1, ¶ 12; Doc. 34 at 55-58). Defendant "denies" these facts. (Doc. 47 at 10).

As to the alleged failure to supervise the removal of the refractory. Defendant's Vice President, Mr. Ollis, stated that the quality control supervisor and the project supervisor, Mr. Gardner, should have been in the recovery boiler when the refractory was being removed. (Doc. 28 at 92-93). Mr. Ollis did not know whether Mr. Gardner was in the recovery boiler, but the quality control supervisor admitted to not being in the recovery boiler at the time of removal. *Id.*; (Doc. 23-4, ¶ 4). Defendant did not cite to any facts in the record that contradict Plaintiff's contentions. Rather, Defendant focused on the fact that Plaintiff's quality control specialist was not present. (Doc. 47 at 9).

As there are genuine issues of material fact, whether Defendant breached the contract is a question that properly should be decided by the jury. Accordingly, summary judgment is **DENIED** with respect to all of the breach of contract claims which each arise out of these disputed facts.

## II.     Negligence

Under Georgia law, there are four elements to a cause of action for negligence: 1) the existence of a duty on the part of the defendant; 2) a breach of such duty; 3) causation of the injury alleges; and 4) damages as a result of the alleged breach of duty. *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162, 163 (2013). Generally, questions of negligence are for the jury. *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 158 (2008); *see also Georgia Dept. of Human Resources v. Bulbalia*, 303 Ga. App. 659, 663 (2010). They may be resolved on summary judgment "only when the evidence is plain, palpable, and undisputable." *Id.* Here, the evidence is not.

Duty can arise "either from a valid legislative enactment… or be imposed by a common law principle recognized in the caselaw." *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (2011). Here, Defendant had the "duty implied by law to perform the work in accordance with industry standards." *Schofield Interior Contractors, Inc. v. Standard Bldg. Co., Inc.*, 293 Ga. App. 812, 814 (2008); *see also Jai Ganesh Lodging, Inc. v. David M. Smith, Inc.*, 328 Ga. App. 713, 720 (2014). This duty requires "building contractors and others performing skilled services" to "exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession." *Id.*

Plaintiff alleges two breaches of this duty. First, Plaintiff alleges that Defendant breached the duty to exercise care in accordance with industry standards by using a two-man jackhammer to remove the refractory. (Doc. 22-1 at 15). As discussed above, there is a genuine dispute of material fact as to whether use of the two-man jackhammer was in accordance with industry standards. As such, Plaintiff has failed to establish, as a matter of law, that Defendant breached its duty.

Second, Plaintiff alleges that Defendant breached its duty by failing to properly supervise removal of the refractory. (Doc. 22-1, at 15). As discussed above, while there is a closer question regarding whether Defendant failed to properly supervise the refractory removal, Plaintiff has pointed to no facts in the record that prove that any such failure of supervision directly or proximately caused the alleged damage. As such, Plaintiff's Motion for Summary Judgment as to its negligence claims is **DENIED**.

### III.    Attorney's Fees

Plaintiff's Motion for Summary Judgment on the issue of attorney's fees is **DENIED**, in accordance with the Court's disposition of Defendant's Motion for Partial Summary Judgment.

### IV.    Counterclaims

#### a. Conversion

O.C.G.A. § 51-10-1 "embodies the common law action of trover and conversion." *Grant v. Newsome*, 201 Ga. App. 710, 710 (1991). The statute provides: "The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. To establish a claim for conversion under Georgia law, the complaining party must show title to the property or the right of possession, actual possession in the other party, demand for return of the property, and refusal by the other party to the return the property. *Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 454 (2005).; *see also Washington v. Harrison*, 299 Ga. App. 335, 338 (2009).

According to Defendant's 30(b)(6) designated witness, Mr. Ollis, Defendant never demanded return of the property which is the subject of this claim. (Doc. 28 at 91). As such, the demand requirement necessary to support a claim for conversion has not been met, and

17

Plaintiff's Motion for Summary Judgment on Defendant's counterclaim for conversion is **GRANTED**.

### b. Implied Bailment

A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust. O.C.G.A. 44-12-40. There must be an actual or constructive delivery of such goods, with actual or constructive possession in the bailee. *Davidson v. Ramsby*, 133 Ga.App. 128, 131 (1974). Plaintiff argues that Defendant has not presented any evidence to show which tools were constructively delivered to Plaintiff and also has not shown any evidence that Plaintiff has possession of these tools. (Doc. 22-1 at 19). The court finds that genuine issues of material fact remain with respect to both parts of Plaintiff's argument.

Plaintiff focuses on the fact Defendant did not take inventory of allegedly missing tools at the time it left the job site and the testimony of Mr. Cartrette, who stated that it was possible no tools were left at the jobsite, although he was not certain one way or the other. (Doc. 31 at 86). Defendant, however, focuses on the testimony of Mr. Hamilton, who stated that employees left their company tools at the job site when escorted from the premises, (Doc. 36 at 110) and Mr. Ollis, who says there were losses in welding lead, rigging equipment, and other company owned tools on site (Doc. 28 at 30). Given the conflicting testimony, there is a genuine dispute as to a material fact. As such, Plaintiff's Motion for Summary Judgment on Defendant's counterclaim of breach of implied bailment is **DENIED**.

### c. Unjust Enrichment and Quantum Meruit

Under Georgia law, recovery under the theory of unjust enrichment and the theory of quantum meruit is unavailable "when an express contract exists governing all the claimed rights and responsibilities of the parties." *Davidson v. Maraj*, 609 Fed. Appx. 994, 997 (11th Cir. 2015); *see also Cochran v. Ogletree*, 244 Ga.App. 537, 538 (2000); *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (1997). There is no dispute about the validity of the express

contract in this case. (Doc. 47 ¶ 9). As such, Plaintiff's Motion for Summary Judgment on Defendant's counterclaims of unjust enrichment and quantum meruit is **GRANTED.**

## CONCLUSION

In light of the forgoing, Defendant's Motion for Spoliation and Sanctions (Doc. 21) and Plaintiff's Motion for Sanctions Pursuant to Rule 11 (Doc. 52) are **DENIED**. Defendant's Motion for Partial Summary Judgment (Doc. 20) is **DENIED**, and Plaintiff's Motion for Partial Summary Judgment (Doc. 22) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**, this  29th  day of  August , 2016.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**